WO                              IN THE UNITED STATES DISTRICT COURT

                              FOR THE DISTRICT OF ARIZONA


SITEVOICE, LLC, an Oregon Limited          )
Liability Company,                         )
                                           )
              Plaintiff/counterdefendant,  )
                                           )
      vs.                                  )
                                           )
GYRUS LOGIC, INC., et al.,                 )
                                           )       No. 2:14-cv-0883-HRH
              Defendants/counterclaimants, )
_____)
                                           )
GYRUS LOGIC, INC., et al.,                 )
                                           )
              Third-party plaintiffs,      )       O R D E R
                                           )
      vs.                                  )       Motions to Dismiss
                                           )
DOUGLAS BEAN, et al.,                      )
                                           )
              Third-party defendants.      )
_____)


        Defendants move to dismiss[1] plaintiff's amended complaint.  This motion is

opposed.[2]  Oral argument was not requested and is not deemed necessary.

_____

        [1]The combined Rule 12 motions to dismiss were filed in state court by all but one of
the defendants and do not have federal court docket numbers.  Defendant Dale's joinder
in the motions to dismiss was filed at Docket No. 12.

        [2]Docket No. 19.

Facts

Plaintiff is Sitevoice, LLC.  Defendants are Gyrus Logic, Inc.; Luis and Esemel Valles; Peter and Stacie Trompetter; and John Dale.  Mr. Valles and Mr. Trompetter are alleged to be officers of Gyrus Logic and Mr. Dale is alleged to be a former employee/officer of plaintiff.[3]

Plaintiff "is engaged in the development and marketing of interactive natural language processing software and systems[.]"[4] Plaintiff alleges that it "entered into a series of contracts ... collectively referred to ... as the 'GLA'[, which] governed the sale and transfer of ownership of the Platica software patent, technology, and related intellectual property from" Gyrus Logic to plaintiff.[5]

Plaintiff alleges that defendants have breached the GLA "on a number of counts, causing measurable and significant damages to its past, present, and future business interests."[6] Plaintiff asserts eight breach of contract claims.  In Count I, plaintiff alleges that

---

[3]Amended Complaint [etc.] at 5, ¶¶ 5 & 8.  The amended complaint was filed in state court and does not have a federal court docket number.

[4]Id. at 4, ¶ 4.

[5]Id. at 2.  Two of the contracts contain forum selection clauses that call for an Oregon venue and choice-of-law clauses that provide that claims related to the contracts are governed by Oregon law.  The parties have agreed to waived these provisions.  Joint Notice at 1, Docket No. 23.

[6]Amended Complaint [etc.] at 6-7, ¶ 14.

Gyrus Logic, Mr. Valles, and Mr. Trompetter breached the GLA by failing to deposit the source code for Platica into escrow.[7]  In Count II, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached the GLA by failing to release the permanent license generation algorithm.[8]  In Count III, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached the GLA by failing to assign certain intellectual property to plaintiff.[9]  In Count IV, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached the GLA by failing to provide programming development and maintenance services in a timely manner.[10]  In Count V, plaintiff asserts a breach of warranty claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter based on allegations that the Platica technology was not fully developed when it was sold to plaintiff.[11]  In Count VI, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached the non-compete provision in the GLA.[12]  In Count VII, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached

---

[7]Amended Complaint [etc.] at 8-9, ¶¶ 16-22.

[8]Id. at 10-13 , ¶¶ 23-33.

[9]Id. at 13-14 , ¶¶ 34-38.

[10]Id. at 14-19, ¶¶ 39-44.

[11]Id. at 19-20, ¶¶ 45-48.

[12]Id. at 20-27, ¶¶ 49-66.

the GLA by continuing to market Platica on its website.[13]  And, in Count VIII, plaintiff alleges that Gyrus Logic's, Mr. Valles', and Mr. Trompetter's breaches of the GLA were willful.[14]

Plaintiff also asserts five conversion claims in its amended complaint.  In Count IX, plaintiff alleges that Gyrus Logic, Mr. Valles, Mr. Trompetter, and Mr. Dale converted an idea originally conceived by Doug Bean, plaintiff's CEO, by refusing to name Mr. Bean as an inventor on the patent for the idea (the Question Generator patent).[15]  In Count X, plaintiff alleges that Gyrus Logic, Mr. Valles, Mr. Trompetter, and Mr. Dale converted the ownership of the Question Generator patent.[16]  In Count XI, plaintiff alleges that Gyrus Logic, Mr. Valles, Mr. Trompetter, and Mr. Dale converted the ownership of the Grammar Expert technology by refusing to assign this technology to plaintiff.[17]  In Count XII, plaintiff alleges that Gyrus Logic, Mr. Valles, Mr. Trompetter, and Mr. Dale converted intellectual property belonging to plaintiff when it placed the Grammar Expert technology into the

---

[13]Amended Complaint [etc.] at 27-28, ¶¶ 67-71.

[14]Id. at 29, ¶¶ 72-74.

[15]Id. at 30-32, ¶¶ 76-82.

[16]Id. at 32-36, ¶¶ 83-91.

[17]Id. at 37-40, ¶¶ 92-98.

non-provisional patent application for the Question Generator.[18]   And, in Count XV,

plaintiff asserts a conversion claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter

based on allegations that they converted "software, technology, and intellectual

property...."[19]

Next, plaintiff asserts a number of tort claims.  In Count XIII, plaintiff asserts a fraud

claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter based on representations they

made regarding the readiness of the technology plaintiff was purchasing.[20]  In Count XIV,

plaintiff asserts a negligent misrepresentation claim against the same three defendants

based on the same representations about the readiness of the technology.[21]  In a second

Count XI, plaintiff asserts a defamation claim against Gyrus Logic, Mr. Valles, and Mr.

Trompetter.[22]  In a second Count XII, plaintiff asserts a tortious interference with contract

claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter.[23]  In a second Count XIII,

plaintiff asserts a tortious interference with business claim against Gyrus Logic, Mr. Valles,

---

[18]Amended Complaint [etc.] at 40-41, ¶¶ 99-102.

[19]Id. at 44, ¶¶ 126-131.

[20]Id. at 41-42, ¶¶ 103-115.

[21]Id. at 42-43, ¶¶ 116-125.

[22]Id. at 44-45, ¶¶ 132-138.

[23]Id. at 45-46, ¶¶ 139-147.

and Mr. Trompetter.[24]  And, in Count XIX, plaintiff asserts an aiding and abetting claim against Mr. Dale, Mrs. Valles, and Mrs. Trompetter.[25]

Finally, plaintiff alleges several claims against all defendants based on Arizona's Racketeering and Corrupt Influences Act (AZRAC).  In Count XX, plaintiff asserts an AZRAC claim based on allegations that defendants engaged in theft.[26]  In Count XXI, plaintiff asserts an AZRAC claim based on allegations that defendants engaged in extortion.[27]  In Count XXII, plaintiff asserts an AZRAC claim based on allegations that defendants made false claims.[28]  In Count XXIII, plaintiff asserts an AZRAC claim based on allegations that defendants committed fraud.[29]  In Count XXIV, plaintiff asserts an AZRAC claim based on allegations that defendants used and invested income that was derived from racketeering.[30]  In Count XXV, plaintiff alleges that defendants "acquired and maintained interests in and control of [an] enterprise through a pattern of racketeering

---

[24]Amended Complaint [etc.] at 46-47, ¶¶ 148-154.

[25]Id. at 47-48, ¶¶ 155-161.

[26]Id. at 52-54, ¶¶ 175-183.

[27]Id. at 54-55, ¶¶ 184-193.

[28]Id. at 56, ¶¶ 194-199.

[29]Id. at 56-58, ¶¶ 200-209.

[30]Id. at 58, ¶¶ 210-216.

activity."[31]   And, in Count XXVII, plaintiff alleges that defendants conspired to violated AZRAC.[32]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure,[33] defendants now move to dismiss plaintiff's amended complaint.  In the alternative, defendants move for a more definite and certain statement under Rule 12(e) and to strike the redundant, immaterial, impertinent, or scandalous matter pursuant to Rule 12(f).  Defendants also request that they be awarded the attorneys' fees they have incurred in filing the instant motion and in filing their answer and counterclaim.

<u>Rule 12(b)(6) Motion</u>

Defendants' Rule 12(b)(6) motion must be treated as a Rule 12(c) motion for judgment on the pleadings because defendants have already filed their answer.  <u>Elvig v. Calvin Presbyterian Church</u>, 375 F.3d 951, 954–55 (9th Cir. 2004).  In evaluating a motion for judgment on the pleadings, "[t]he [c]ourt inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible

---

[31]Amended Complaint [etc.] at 59, ¶¶ 217-224.

[32]<u>Id.</u> at 59-60, ¶¶ 225-230.

[33]Defendants' motion to dismiss was filed in Arizona state court under Arizona Rules of Civil Procedure.  However, because this case is now in federal court, federal procedural rules apply.  <u>See</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted) ("It is well-settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal").

on its face.'" Harris v. County of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "The [c]ourt may find a claim plausible when

a plaintiff pleads sufficient facts to allow the [c]ourt to draw a reasonable inference of

misconduct, but the [c]ourt is not required 'to accept as true a legal conclusion couched as

a factual allegation.'" Id. (quoting Iqbal, 556 U.S. at 678).

Although the court generally cannot consider matters outside the pleadings when

evaluating a Rule 12(c) motion, "documents not attached to a complaint may be considered

if no party questions their authenticity and the complaint relies on those documents." Id.

at 1132. Thus, in deciding the instant motion, the court has considered the contracts which

defendants attached to their amended answer.

Counts I and III

Plaintiff's breach of contract claims in Counts I and III are based on the Assignment

of Intellectual Property (AIP) and are asserted against Gyrus Logic, Mr. Valles, and Mr.

Trompetter.  However, Mr. Trompetter has no liability to plaintiff for any alleged breach

of the AIP because he was not a party to the AIP.[34]  See A.R.S. § 29-651 ("a member,

manager, employee, officer or agent of a limited liability company is not liable, solely by

reason of being a member, manager, employee, officer or agent, for the debts, obligations

---

[34]AIP at 6, Exhibit 1, Defendants Gyrus Logic, Inc., Luis and Esemel Valles' and Peter and Stacie Trompetter's Amended Answer; and Amended Counterclaim [etc.].  The amended answer was filed in state court and does not have a federal court docket number.

and liabilities of the limited liability company whether arising in contract or tort"); see also, Lumbermen's Ins. Co. v. Heiner, 245 P.2d 415, 419 (Ariz. 1952) (employee acting within the scope of his employment cannot be held liable for his employer's breach of contract). Plaintiff's argument that Mr. Trompetter could be liable under a "piercing the corporate veil" theory fails because plaintiff has not alleged any facts that would suggest that Gyrus Logic was "the alter ego" of Mr. Trompetter. Standage v. Standage, 711 P.2d 612, 615 (Ariz. Ct. App. 1985). Thus, Counts I and III are dismissed as to Mr. Trompetter. Plaintiff is given leave to amend its breach of contract claims in Counts I and III against Mr. Trompetter as it is possible that plaintiff could allege some facts that would suggest that Gyrus Logic was the alter ego of Mr. Trompetter.

As for Mr. Valles, contrary to defendants' contention, he was a party to the AIP, and thus he could be liable for breaching the AIP, if plaintiff has stated plausible breach of contract claims in Counts I and III. "To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." Graham v. Asbury, 540 P.2d 656, 657 (Ariz. 1975).

Plaintiff has not stated a plausible breach of contract claim against Gyrus Logic and Mr. Valles in Count I. As it is currently pled, it is not possible to tell if plaintiff is alleging that Gyrus Logic and Mr. Valles breached the AIP by failing to transfer the source code for the Platica software into escrow or if it is alleging that Gyrus Logic and Mr. Valles failed

to provide the escrow agent with the proper instructions to open the file that contained the source code.  Plaintiff is, however, given leave to amend Count I as to Gyrus Logic and Mr. Valles.

Plaintiff has also failed to state a plausible breach of contract claim in Count III against Gyrus Logic and Mr. Valles.  Although this count is not duplicative of Count I, as defendants contend, this count does not contain a plausible breach of contract claim. Plaintiff has not sufficiently alleged what intellectual property Gyrus Logic and Mr. Valles failed to assign.  Vague, conclusory allegations that they have failed to assign "other patent applications and intellectual property" are not sufficient to state a plausible claim.  Plaintiff is, however, given leave to amend its breach of contract claim in Count III against Mr. Valles and Gyrus Logic.

Count II

In Count II, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached the GLA by failing to release the permanent license generation algorithm. Defendants argue that this count should be dismissed because plaintiff has failed to allege what contract requires them to relinquish this software.  However, plaintiff has cited to a portion of the Product Development and Maintenance Agreement (PDMA) that it alleges requires defendants to release the algorithm in question.

-10-

Gyrus Logic and Mr. Valles were parties to the PDMA and thus they could be liable for breaching the PDMA, if plaintiff's claim in Count II is plausible.  Defendants argue that it is not because plaintiff has failed to allege any damages.  But because  plaintiff alleges that it has been damaged because its ability to grant licenses to its customers has been "chilled[,]"[35] plaintiff has stated a plausible breach of contract claim in Count II against Gyrus Logic and Mr. Valles.

But, Count II is dismissed as to Mr. Trompetter because he was not a party to the PDMA.[36]  Plaintiff is given leave to amend this claim as to Mr. Trompetter because it is possible that plaintiff may be able to allege facts to support a "piercing the corporate veil" theory.

Count IV

In Count IV, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached the GLA by failing to provide programming development and maintenance services in a timely manner.  As an initial matter, Mr. Trompetter is not a party to the PDMA and thus plaintiff's Count IV as to Mr. Trompetter is dismissed.  Plaintiff is not given leave to amend as amendment would be futile.

---

[35]Amended Complaint [etc.] at 13, ¶ 33.

[36]PDMA at 12, Exhibit 2, Defendants Gyrus Logic, Inc., Luis and Esemel Valles', and Peter and Stacie Trompetter's Amended Answer [etc.].

The PDMA provides that

> [i]n the event of any losses, costs, or damages to customer caused by developer, developer shall have no liability beyond repair or replacement of the defective software....  In no event will developer be liable for damages.  In no event shall developer be liable or responsible for any re-procurement costs, loss of profits, loss of use, special, direct, incidental, consequential, or punitive damages of any kind[.[37]]

Because plaintiff is not seeking repair or replacement of the Grammar Expert but rather damages for the alleged delay, plaintiff has not stated a plausible claim that this provision of the PDMA has been breached nor could plaintiff state a plausible claim because plaintiff has alleged that it now has a functional version of the Grammar Expert.[38]  Thus, Count IV is dismissed with prejudice as to Gyrus Logic, Mr. Valles, and Mr. Trompetter.

Count V

In Count V, plaintiff asserts a breach of warranty claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter based on allegations that they represented that they were selling plaintiff "fully functioning software that was integrated with the Grammar Expert development tool" but the software turned out to be defective.[39]  This count appears to be

---

[37]PDMA at 8, Exhibit 2, Defendants Gyrus Logic, Inc. Luis and Esemel Valles', and Peter and Stacie Trompetter's Amended Answer [etc.].

[38]Amended Complaint [etc.] at 19, ¶ 44m.

[39]Id. at ¶ 48.

based on the warranty in the PDMA that the "deliverables" that plaintiff was to be provided would be "fit for their particular purpose."[40]

As an initial matter, because Mr. Trompetter was not a party to the PDMA, plaintiff's breach of warranty claim against him is dismissed.  Plaintiff is not given leave to amend because amendment would be futile.

The PDMA provides that plaintiff's "exclusive remedy under the limited warranty is repair or replacement ... of any defective Software" and that this warranty is "exclusive and in lieu of all other warranties, express or implied, including but not limited to implied warranty of merchantability, or fitness for a particular purpose[.]"[41]  Because plaintiff is seeking damages, not repair and replacement of any defective software, plaintiff has not, and cannot, state a plausible breach of warranty claim.  Thus, Count V is dismissed with prejudice as to Gyrus Logic, Mr. Valles, and Mr. Trompetter.

Count VI

In Count VI, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached the non-compete clause of the PDMA.  This claim is dismissed, without leave to amend, as to Gyrus Logic and Mr. Trompetter because the non-compete clause expressly

---

[40]PDMA at 7, Exhibit 2, Defendants Gyrus Logic, Inc. Luis and Esemel Valles', and Peter and Stacie Trompetter's Amended Answer [etc.].

[41]Id. at 8.

only applies to Mr. Valles.[42]  The clause provides that Mr. Valles "shall not ... perform any related or similar Services for any other Person or individual (including GyrusLogic, Inc.) while this Agreement remains in effect that directly or indirectly competes with" plaintiff.[43]

Defendant argues that plaintiff has failed to plead how Mr. Valles breached the non-compete clause but rather has made rambling, conclusory, and irrelevant allegations. Although plaintiff's allegations are not simple, concise, and direct, they are sufficient to suggest that Mr. Valles breached the non-compete clause in his dealings with Intel.[44] Plaintiff has stated a plausible breach of the non-compete clause claim against Mr. Valles.

<u>Count VII</u>

In Count VII, plaintiff alleges that Gyrus Logic, Mr. Valles, and Mr. Trompetter breached a provision in the PDMA by continuing to market the Platica technology on Gyrus Logic's website.  As Mr. Trompetter is not a party to the PDMA, Count VII is dismissed as to him.  Plaintiff is given leave to amend as to Mr. Trompetter as it is possible that plaintiff can plead sufficient facts to support its "piercing the corporate veil" theory.

As for Gyrus Logic and Mr. Valles, defendants argue that plaintiff has failed to allege how it was damaged as a result of this alleged breach, but plaintiff has sufficiently

---

[42]<u>Id.</u> at 3.

[43]<u>Id.</u>

[44]Amended Complaint [etc.] at 21-27, ¶¶ 55-66.

alleged that its business was damaged.  Plaintiff has stated a plausible breach of contract claim in Count VII as to Gyrus Logic and Mr. Valles.

Count VIII

In Count VIII, plaintiff alleges that Gyrus Logic's, Mr. Valles', and Mr. Trompetter's breaches of contract were willful and that they never intended to honor the GLA.  There is no claim for "willful" breach of contract under Arizona law.  This count is dismissed with prejudice as to Gyrus Logic, Mr. Valles, and Mr. Trompetter.

The Conversion Claims

In Counts IX, X, XI, and XII, plaintiff asserts four conversion claims against Gyrus Logic, Mr. Valles, Mr. Trompetter, and Mr. Dale based on allegations related to the filing of patent applications for the technology that Gyrus Logic was selling to plaintiff.  In Count XV, plaintiff asserts a conversion claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter based on vague allegations that these defendants converted technology owned by plaintiff.

Defendants first argue that these claims are barred by the economic loss rule.  "The 'economic loss doctrine' bars plaintiffs, in certain circumstances, from recovering economic damages in tort."  Flagstaff Affordable Housing Ltd. Partnership v. Design Alliance, Inc., 223 P.3d 664, 665 (Ariz. 2010).  This doctrine "refer[s] to a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompa-

-15-

nied by physical injury to persons or other property." Id. at 667. "'Economic loss,' ... refers to pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits." Id.

The property that plaintiff has alleged has been converted is the subject of either the AIP or the PDMA. And, the harm that plaintiff has alleged in its conversion claims is essentially the failure to receive the property promised in the GLA, and not a separate harm. Thus, plaintiff's conversion claims are barred by the economic loss doctrine and these claims dismissed with prejudice.[45]

The Other Tort Claims

In addition to the conversion claims, plaintiff asserts the following tort claims: 1) a fraud claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter (Count XIII); 2) a negligent misrepresentation claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter (Count XIV); 3) a defamation claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter (second Count XI); 4) a tortious interference with contract claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter (second Count XII); 5) a tortious interference with business claim against Gyrus Logic, Mr. Valles, and Mr. Trompetter ( second Count XIII); and 6) an

---

[45]Because the conversion claims are barred by the economic loss doctrine, the court need not consider defendants' alternative arguments that plaintiff's conversion claims are preempted by the Arizona Trade Secret Act or that plaintiff has failed to plead plausible conversion claims.

aiding and abetting claim against Mr. Dale, Mrs. Valles, and Mrs. Trompetter (Count XIX).

Defendants first argue that these tort claims are also barred by the economic loss doctrine because plaintiff is seeking to recover only economic damages. As plaintiff is quick to point out, however, courts have held that the economic loss rule does not apply to fraud claims, <u>KD & KD Enterprises, LLC v. Touch Automation, LLC</u>, Case No. CV–06–2083–PHX–FJM, 2006 WL 3808257, at *2 (D. Ariz. Dec. 27, 2006), and negligent misrepresentation claims, <u>Aventis Technologies Corp. v. JP Morgan Chase Bank</u>, Case No. CIV–03–1624 PHX JWS, 2004 WL 5137578, at *3 (D. Ariz. Jan. 26, 2004). But, the economic loss rule does apply to plaintiff's defamation (second Count XI), tortious interference with contract (second Count XII), tortious interference with business (second Count XIII), and aiding and abetting (Count XIX) claims. Therefore, these claims are dismissed with prejudice.

As for plaintiff's fraud (Count XIII) and negligent misrepresentation (Count XIV) claims, these claims are dismissed because plaintiff has failed to plead these claims with particularity. In alleging fraud, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." <u>Vess v. Ciba–Geigy Corp. USA</u>, 317 F.3d 1097, 1104, 1106 (9th Cir. 2003) (internal quotation omitted). Plaintiff had not alleged which defendant made which representations, when any alleged misrepresentation was made, or how any

of the alleged representations were false.  Plaintiff is however given leave to amend its fraud and negligence misrepresentation claims because it is possible that plaintiff could state plausible fraud and negligent misrepresentation claims that would not be barred by the economic loss doctrine.[46]

AZRAC Claims

In Counts XX, XXI, XXII, XXIII, XXIV, XXV, and XXVII, plaintiff asserts AZRAC claims.  Defendants first argue that these claims are barred by the economic loss doctrine, but defendants have cited no authority that suggests that this doctrine applies to statutory claims such as AZRAC claims.  Defendants also argue that these claims are preempted by the Arizona Uniform Trade Secret Act, but as noted above, the court is not yet convinced that plaintiff's claims are based on the misappropriation of secret information.

Plaintiff's AZRAC claims are dismissed, however, because plaintiff has failed to state plausible AZRAC claims.  In order to state a plausible claim under AZRAC, a plaintiff must allege "'a pattern of racketeering activity,' which i[s] defined as '[a]t least two acts of racketeering' that are 'related' and 'continuous'...." Lifeflite Medical Air Transport, Inc. v. Native American Air Services, Inc., 7 P.3d 158, 161 (Ariz. Ct. App. 2000) (quoting H.J. Inc

---

[46]Defendants also argue that plaintiff's fraud and negligent misrepresentation claims are preempted by the Arizona Uniform Trade Secrets Act, but the court is not persuaded, based on what is currently before it, that these claims "are based on the misappropriation of secret information." Firetrace USA, LLC v. Jesclard, 800 F. Supp. 2d 1042, 1048 (D. Ariz. 2010).

v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989)).   "A pattern of activity lasting only a few months does not reflect the 'long term criminal conduct' to which RICO was intended to apply." Religious Technology Center v. Wollersheim, 971 F.2d 364, 366-67 (9th Cir. 1992).[47]  Plaintiff has not alleged over what time period each of the predicate acts for each AZRAC claim occurred.  Plaintiff has done little more than quote portions of AZRAC, which is not sufficient to state a plausible claim.

Plaintiff's AZRAC claims also appear to be based on "allegations of one scheme, perpetrated against a single victim," which "are typically insufficient to establish a pattern" of racketeering. R. Prasad Industries v. Flat Irons Environmental Solutions Corp., Case No. CV 12–8261–PCT–JAT, 2013 WL 2217831, at *17 (D. Ariz. 2013).  Rather, plaintiff's "apparent status as the sole victim of [defendants'] alleged misconduct supports the conclusion that a 'pattern' of racketeering activity has not been alleged." Laron, Inc. v. Construction Resource Services, LLC, Case No. CV–07–0151–PCT–NVW, 2007 WL 1958732, at *4 (D. Ariz. July 2, 2007).

In addition, plaintiff's AZRAC claim that is based on fraud has not been pled with the requisite particularity.  See A.G. Edwards & Sons, Inc. v. Smith, 736 F. Supp. 1030, 1032

---

[47]"The Arizona Court of Appeals concluded in Lifeflite ... that the Arizona legislature intended that AZRAC's definition of 'pattern of racketeering activity' should be interpreted in accordance with the U.S. Supreme Court's interpretation of that phrase in the federal statute." Aviva USA Corp. v. Vazirani, 902 F. Supp. 2d 1246, 1270 (D. Ariz. 2012).

(D. Ariz. 1989) (analyzing whether AZRAC claim, as well as other fraud claims, had been pled with particularity).

Plaintiff is given leave to amend its AZRAC claims because it is possible that plaintiff could state plausible AZRAC claims. The court would note, however, that based on the allegations in plaintiff's amended complaint, it is the court's perception that this is not really a racketeering case.

### Rule 12(e) Motion

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Defendants' Rule 12(e) motion is denied because such a motion "must be made before filing a responsive pleading...." Fed. R. Civ. P. 12(e). The Rule 12(e) motion is also denied because it has been rendered moot by the disposition of defendants' Rule 12(b)(6) motion.

### Rule 12(f) Motion

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendants' primary argument here is that plaintiff's amended complaint contains duplicative claims which should be dismissed. This portion of defendants' Rule 12(f) motion has been rendered moot by the disposition of defendants' Rule 12(b)(6) motion.

Defendants also argue that plaintiff's amended complaint contains a great deal of immaterial matter in the form of rhetorical questions, conclusory statements of law, improper argument, and speculation.  Had defendants moved to dismiss plaintiff's amended complaint pursuant to Rule 8(a), the court would have granted such a motion because plaintiff's amended complaint is "needlessly long [and] highly repetitious...." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) (citation omitted).  However, defendants have moved to strike portions of plaintiff's amended complaint under Rule 12(f).  Because plaintiff is being given an opportunity to amend its complaint, defendants' Rule 12(f) motion is denied.

Should plaintiff elect to file a second amended complaint, the court reminds plaintiff that Rule 8(a)(2), Federal Rules of Civil Procedure, requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Arguments, rhetorical questions, conclusory statements of law, and other such matter have no place in a complaint.  Rather, the focus should be on alleging sufficient facts to support the claims being asserted.

### Conclusion

Defendants' Rule 12(e) and Rule 12(f) motions are denied.

Defendants' Rule 12(b)(6) is granted as to Mr. Trompetter.  All of plaintiff's claims against Mr. Trompetter are dismissed.  Plaintiff is given leave to amend its breach of

contract claims in Counts I, II, III, and VII if plaintiff believes it has some basis for alleging a "piercing the corporate veil" theory. Plaintiff's breach of contract claims against Mr. Trompetter in Counts IV, V, VI, and VIII are dismissed with prejudice. Plaintiff's conversion claims in Counts IX, X, XI, XII, and XV against Mr. Trompetter are dismissed with prejudice. Plaintiff's tort claims in the second Counts XI, XII, and XIII are dismissed with prejudice. Plaintiff is given leave to amend its fraud and negligent misrepresentation claims in Counts XIII and XIV against Mr. Trompetter. Plaintiff is also given leave to amend its AZRAC claims in Counts XX, XXI, XXII, XXIII, XXIV, XXV, and XXVII against Mr. Trompetter.

Defendants' Rule 12(b)(6) is denied in part and granted in part as to Mr. Valles. It is denied as to Counts II, VI, and VII. It is otherwise granted. Plaintiff's breach of contract claims in Counts I, III, IV, V, and VIII against Mr. Valles are dismissed. Counts IV, V, and VIII are dismissed with prejudice, but plaintiff is given leave to amend as to Counts I and III. Plaintiff's conversion claims in Counts IX, X, XI, XII, and XV against Mr. Valles are dismissed with prejudice. Plaintiff's tort claims in the second Counts XI, XII, and XIII are dismissed with prejudice. Plaintiff is given leave to amend its fraud and negligent misrepresentation claims in Counts XIII and XIV against Mr. Valles. Plaintiff is also given leave to amend its AZRAC claims in Counts XX, XXI, XXII, XXIII, XXIV, XXV, and XXVII against Mr. Valles.

-22-

Defendants' Rule 12(b)(6) motion as to Gyrus Logic is granted in part and denied in part. It is denied as to Counts II and VII. It is otherwise granted. Plaintiff's breach of contract claims in Counts I, III, IV, V, VI, and VIII against Gyrus Logic are dismissed. Counts IV, V, VI, and VIII are dismissed with prejudice, but plaintiff is given leave to amend as to Counts I and III. Plaintiff's conversion claims in Counts IX, X, XI, XII, and XV against Gyrus Logic are dismissed with prejudice. Plaintiff's tort claims in the second Counts XI, XII, and XIII are dismissed with prejudice. Plaintiff is given leave to amend its fraud and negligent misrepresentation claims in Counts XIII and XIV against Gyrus Logic. Plaintiff is also given leave to amend its AZRAC claims in Counts XX, XXI, XXII, XXIII, XXIV, XXV, and XXVII against Gyrus Logic.

Defendants' Rule 12(b)(6) motion is granted as to Mr. Dale, Mrs. Trompetter, and Mrs. Valles. All of plaintiff's claims against these defendants are dismissed. Plaintiff's conversion claims in Counts IX, X, XI, and XII against Mr. Dale are dismissed with prejudice. Plaintiff's Count XIX against Mr. Dale, Mrs. Valles, and Mrs. Trompetter is dismissed with prejudice. Plaintiff is given leave to amend its AZRAC claims in Counts XX, XXI, XXII, XXIII, XXIV, XXV, and XXVII against Mr. Dales, Mrs. Valles, and Mrs. Trompetter.

Plaintiff's amended complaint, should plaintiff elect to file one, shall be filed on or before October 23, 2014.

Defendants' request for attorney fees is denied.  The question of attorney's fees will be taken up when this case is fully resolved.[48]

DATED at Anchorage, Alaska, this <u>23rd</u> day of September, 2014.

/s/ H. Russel Holland
United States District Judge

---

[48]As this case moves forward, the court expects counsel to act in a professional and courteous manner at all times and in all matters.  Making disparaging remarks about opposing counsel does nothing to advance this litigation.